HESTER A. VERMILLION V. R. B. HAYNES ET AL.

No. A-1610. Decided December 1, 1948.
Rehearing overruled December 31, 1948.
(215 S. W., 2d Series, 605.)

*Credric G. Hamlin* and *Franklin E. Spafford,* both of Dallas, for petitioner.

It was error for the Court of Civil Appeals to hold that petitioner Hester A. Vermillion was liable for rents charged against her husband for his use and possession of the property; that it also erred in refusing to allow the said petitioner the purchase price paid by her on said property and also that paid by her husband during his life and in holding that the trial court acted properly in striking the trial amendment offered by respondents. Skinner v. Vaughn, 150 S. W. (2d) 260; 11 Tex. Jur., 470; 12 Tex. Jur. 74 and 83.

*Geo. K. Holland,* of Dallas, for respondents.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is a suit for partition and accounting filed by R. B. Haynes et al, respondents, against Hester A. Vermillion, petitioner. A trial court judgment for respondents was affirmed by the court of civil appeals. 211 S. W. (2d) 781.

In 1920 H. M. Vermillion and his wife, Hattie Haynes Vermillion, bought as their community property a lot in Dallas, for $1,500.00 cash and a vendor's lien note for $3,000.00. In December, 1924, they renewed a balance of $2,000.00 due on this note, for five years. On February 6, 1929, H. M. Vermillion executed a general warranty deed conveying the lot to his wife, Hattie Haynes Vermillion, "for her own individual and separate estate and to and for her own separate and individual use and benefit", the consideration being "ten dollars paid by Mrs. Hattie Haynes Vermillion, and for the further consideration of love and affection I have for my said wife." In December, 1929, and again in December, 1935, Mrs. Vermillion and her husband executed a five-year renewal of the outstanding $2,000.00 note and the lien securing it.

In January, 1937, Hattie Haynes Vermillion died intestate and without issue. In June, 1939, H. M. Veremillion married petitioner, Hester A. Vermillion.

In December, 1940, Vermillion and petitioner renewed the $2,000.00 note for another five years. In December, 1943, Vermillion paid $1,000.00 on this note as well as accrued interest of $60.00. Then in May, 1944, he died testate, leaving all his estate to petitioner and naming her independent executrix. On December 15, 1944, petitioner paid the $1,000 balance due on the $2,000.00 lien note and $60.00 accrued interest.

On February 9, 1945, respondents filed this suit against petitioner individually and as independent executrix, claiming an undivided half interest in the lot as the collateral kin and heirs of Hattie Haynes Vermillion, on the theory that the lot became her separate property under the deed executed to her by H. M. Vermillion. They alleged that after the death of Hattie Haynes Vermillion, H. M. Vermillion had the benefits, use and possession of the lot until his death, since which time Hester A. Vermillion had had the use and benefit of it; that the "reasonable rental value thereon was $75.00 per month, one half of which belongs to" respondents; they prayed that the lot be partitioned and that they have "a full and complete accounting for all rents, revenues and income therefrom and use thereof" since the death of Hattie Haynes Vermillion.

Petitioner answered that H. M. Vermillion executed the deed to Hattie Haynes Vermillion only for convenience and without any intention of passing title to her as her separate estate, for which reason she had held the record title for the benefit of the community estate and the lot remained the community property of H. M. and Hattie Vermillion; that when the latter died intestate and childless the entire estate passed to the former; and that when he died it passed under his will to petitioner. In the alternative, she prayed that, should the court decree any interest in the lot to respondents, she recover in an accounting for what she and H. M. Vermillion had paid on the purchase money note because what he had paid was out of their community funds, for taxes paid, for the enhanced value of improvements made with community funds and for certain other expenses paid in connection with the property.

By trial amendment filed during the hearing she pleaded limitation of both two and four years against respondents' demands.

After trial without a jury, the trial court decreed that respondents, as the heirs of Hattie Haynes Vermillion, were the owners of an undivided half interest in the lot and appointed

a receiver to sell it. He found that the reasonable rental value of the lot from January 12, 1937, to June 2, 1947, the date of judgment, was $10,371.98 and that the respondents were entitled to have half that amount charged against petitioner's interest. He allowed petitioner half the taxes paid by her and H. M. Vermillion on the lot after the death of Hattie Haynes Vermillion, $1,624.35 for the use of equipment necessary to conducting a sandwich shop on the lot from the date of Hattie Haynes Vermillion's death to date of judgment, half the expenses incurred in operating the shop from the death of H. M. Vermillion to date of judgment, and $750.00 as half the enhanced value of the lot by reason of improvements placed on it in 1933; but he refused to allow her the $2,000.00 and interest paid by her and her husband on the vendor's lien note.

On the day following the date of judgment, respondents moved the trial court to strike petitioner's trial amendment pleading limitation against respondents' demands. The amendment had been filed with permission of the court on May 28, six days after the trial started and four days before judgment was rendered. The grounds upon which respondents prayed dismissal of the trial amendment were (1) that petitioner has had more than a year in which to file it but had failed to do so; (2) it was filed after the evidence had closed and without previous notice to respondents; and (3) it was without merit and without support "under the evidence and if given effect would prevent equity being done." The court entered an order striking the trial amendment but recited no reason other than that he "is of the opinion and so finds that the same should be sustained."

The application for writ of error presents three questions for our decision, namely (1) whether petitioner is liable for rents charged against H. M. Vermillion for his use and possession of the property; (2) whether she should be allowed the $2,000.00 balance of the purchase price and interest paid on the property by her and her husband, H. M. Vermillion; and (3) whether the trial court erred in striking her trial amendment.

■ In support of her point that the court of civil appeals erred in holding she was liable for rents charged against H. M. Vermillion for his use and possession of the property from the death of Hattie Haynes Vermillion until his own death in May, 1944, petitioner contends that H. M. Vermillion could not be so charged because he was a tenant in common with respondents.

Respondents counter that he was liable because he held the property adversely to, and to the exclusion of, them as his co-tenants. That issue is settled by the trial court's Finding of Fact No. 7 as follows: "After the death of Hattie Haynes Vermillion, H. M. Vermillion immediately took complete possession of the real estate conveyed by him to her as aforesaid, and improvements, and held same exclusively to himself, and claimed to be the sole owner thereof. He rented out a portion of said property retaining all rents received therefrom, and used a portion of said property for the conduct of business operated by him thereon, retaining to himself all the benefits thereof. Such possession, claim and use continued until his death." There was evidence to support all phases of this finding, and it was shown by the probate proceedings on the estate of Hattie Haynes Vermillion that H. M. Vermillion listed the property in controversy as the community property of himself and her; which, if true, would have made it entirely and exclusively his. In that situation the rule is: "Where such tenancy in common is not acknowledged but denied, and the tenant in exclusive possession asserts an adverse claim to the entire property and holds possession thereof under such claim, the excluded tenants in common may, without demand for joint possession, recover for the use and occupation of their part of the land." Buchanan v. Davis (Civ. App.), 43 S. W. (2d) 279, expressly approved by this court in 60 S. W. (2d) 192; Skinner v. Vaughan et al (Civ. App.), 150 S. W. (2d) 260 (er. dism. cor. judg.).

Further, petitioner asserts that H. M. Vermillion was not liable for these rents because the property was his business homestead. Since she pleaded that in bar of respondents' demand for rents, it became an issue of fact which it was her burden to prove. However, the trial court, in response to a motion by petitioner, filed findings of fact and conclusions of law in which, among other things, he found that "it was never claimed or designated as a homestead." Although the finding is not clear, petitioner did not except to it. If the trial court meant that the property was never used by H. M. Vermillion as a business homestead, that closed the issue in so far as this appeal is concerned. However, if petitioner can properly establish under another trial that the property was being used by H. M. Vermillion as a business homestead when Hattie Haynes Vermillion died respondents are not entitled to recover rents for the period that he continued thereafter so to use it.

In further support of the point of error under consideration, petitioner says she "could not in any event be charged with

rental value incurred by her predecessor in title." As we understand the argument on this proposition, petitioner insists that she cannot be held *personally* for these rents. It is sufficient to say that no such liability has been asserted or adjudged against her. Respondents' prayer is for partition and accounting, which means that any claims which they had against their co-tenant H. M. Vermillion shall be paid out of petitioner's share of the proceeds of sale of the common property before she receives anything; and it is so recited in the judgment. The point is overruled.

■ In two points petitioner complains of the holding by the court of civil appeals that she is not entitled in the accounting to the $1,000.00 and interest paid by H. M. Vermillion or to the $1,000.00 and interest paid by herself on the $2,000.00 purchase money note due on the lot when it was deeded by H. M. Vermillion to Hattie Haynes Vermillion. This contention was foreclosed as early as the case of Robinson v. Douthit, 64 Texas, 101. There Ambrose Douthit conveyed 640 acres by general warranty deed to his son, Presley J. Douthit, "for and in consideration of the natural love and affection I have for my son"; and the warranty was: "I hereby convenant to and with the said Presley J. Douthit that I am seized in fee of said lands, that I have good right and authority to convey, and that I will forever warrant and defend the title thereto from all legal claims made or to be made therefor." Robinson claimed that this deed did not have the effect to pass the after-acquired title of Ambrose Douthit (from one who purchased the land at foreclosure sale to satisfy an indebtedness and lien existing against the land at the time Ambrose Douthit conveyed it to his son) because no valuable consideration had been paid by P. J. Douthit. Holding that the consideration of love and affection was sufficient to give effect to the covenants of the deed, this court said: "Ambrose Douthit held title to the land at the time he conveyed to his son, but if, by any act done by him prior to making the conveyance, he had incumbered the land with a valid lien through which title subsequently passed to another, then there was a breach in the covenant of his deed. Any such incumbrance it was his duty to discharge, the son not taking subject to it and with agreement to discharge it himself. If he had bought at the sale foreclosing the lien, his purchase certainly would have inured to the benefit of his son or those holding through him, and so, by reason of the warranty which he had given." In Johnson v. Sherrill (Civ. App.), 271 S. W., 276, it is held to be the duty of the grantor, under a general warranty, to pay off and discharge all liens and incumbrances outstanding, as a charge

against the land conveyed. And this duty extends to an heir of the grantor but only to the extent of the value of the property inherited by him. Cleveland & Sons v. Smith et al (Civ. App.), 156 S. W., 247 (er. ref.).

Therefore we hold that when H. M. Vermillion, grantor in the deed to Hattie Haynes Vermillion, paid the $1,000.00 and interest and when petitioner, as executrix and devisee under his will, later paid the remaining $1,000.00 and interest due on the vendor's lien note outstanding when the deed was executed, they were only doing what they were obligated by Vermillion's warranty to do. And petitioner is not entitled to reimburse therefor in an accounting with respondents as heirs of Hattie Haynes Vermillion.

■ Petitioner's last point relates to the action of the trial court in striking her trial amendment. Respondements say that the amendment was permitted to be filed only to make a record for review of the matter on appeal, so we shall deal with the matter as if permission to file the amendment had been refused in first instance. There are many cases dealing with this question and it is manifestly impractical to review all of them, since each case was decided under its own peculiar facts; but their effect is that the matter of permitting a trial amendment to be filed is addressed to the sound discretion of the trial court and his order. will not be disturbed unless it clearly appears that he abused his discretion. Rule 66, T.R.C.P., provides that "if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him is maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence."

The language of that rule, as applied to the facts of this case, convinces us that the trial court erred in striking the trial amendment The rule directs that the court shall "freely" allow an amendment if to do so will subserve the "presentation of the merits of the action" and the other party fails to satisfy the court that the amendment will prejudice him in maintaining his action or defense on the merits. Here the respondents' objections were that the petitioner had neglected for more than a year to file the amendment, that it was tendered after the evi-

dence was closed and without previous notice, and that it was without merit or support in the evidence and would prevent equity being done. It will be observed that these objections carried neither suggestion nor hint that the respondents were in any manner suprised or unprepared to meet the issues raised by the amendment; nor did they suggest that, in this trial without a jury, the amendment would otherwise prejudice in maintaining their action on its merits. The statement that "it was without merit" and "would prevent equity being done" amounted to nor more than an opinion or conclusion of the pleader, the soundness of which may well be opened to question. Under those circumstances, we think that both the spirit and intent of Rule 66 required that the amendment be permitted. Illustrative cases supporting our holding are Butcher et ux. v. Tinkle et al (Civ. App.), 183 S. W. (2d) 227 (er. ref. W. M.), and Brown et al v. Jones et al (Civ. App.), 134 S. W. (2d) 850. Rule 66, supra, with minor differences, is the same as Federal Rule 15(b), 28 U. S. C. A., which has been applied like we have applied Rule 66 here, in Coblentz v. Spark et al, 35 F. Supp. 605, and Overfield v. Pennroad Corp. et al, 39 F. Supp., 482.

The judgment of the court of civil appeals is reversed and this cause is remanded to the district court for a new trial.

Opinion rendered December 1, 1948.

Rehearing overruled December 31, 1948.