Texas Employment Commission and General Electric
Company, Petitioners
v.
International Union of Electric Radio and Machine
Workers, local union no. 782, afl-cio et al, Respondents

No. A-8454. Decided November 22, 1961
Rehearing Denied January 10, 1962
352 S.W. 2d 252

*Will Wilson*, Atty. Gen., *C. K. Richards, Sam Lane*, Asst. Attys. Gen., for Texas Employment Commission.

*Ramey, Brelsford, Hull & Flock*, Tyler, *Wm. J. Barron*, New York City, *L. Mason Harter*, De Witt, N. Y., and *Jack W. Flock*, Tyler, of counsel, for General Electric Company.

*Sam Houston Clinton, Jr.*, Austin, for respondents.

ASSOCIATE JUSTICE STEAKLEY delivered the opinion of the Court.

This case as it reaches us with the Texas Employment Commission and General Electric Company as petitioners involves the right of eighty-eight respondents to unemployment compensation benefits for the week of August 4, 1957, during which the plant of General Electric Company at Tyler was shut down. The facts common to all of the respondents require a construction of certain provisions of their collective bargaining contract in the light of the applicable provisions of the Texas Unemployment Compensation Act. The claims of the respondents were denied by the Commission in one proceeding and suit was brought by all the respondents in the District Court of Smith County to review the adverse decision. The district court sustained the Commission. The Court of Civil Appeals reversed the district court and entered judgment "directing the Texas Employment Commission to grant the claims of the eighty-eight claimants * * *." 346 S.W. 2d 649.

■ Preliminarily, petitioners urge two jurisdictional pleas. The first is that the district court was without jurisdiction in the fact that the claim of each respondent was approximately $25.00 although aggregating, of course, more than $500.00. This plea to the jurisdiction was not raised in the trial court but was urged in the Court of Civil Appeals, and is urged here, as fundamental error. Lack of jurisdiction in the district court would be fundamental error and a plea to such effect is subject to review although first presented on appeal. We hold, however, that the plea is without merit.

■ There was proper joinder of the claimants under Rule 40, Texas Rules of Civil Procedure. *Hindman v. Texas Lime Co.,* 157 Texas 592, 305 S.W. 2d 947, 954. The rights jointly asserted by the several claimants arose out of the same transactions and occurrences within the purview and purposes of the Rule. The determining questions of law and of fact are common to all.

Article 1906a, V.A.C.S., provides:

"Where two or more persons originally and properly join in one suit, the suit for jurisdictional purposes shall be treated as if one party were suing for the aggregate amount of all their claims added together, exclusive of interest and cost; provided that this statute shall not prevent jurisdiction from attaching on any other ground. Provided further, that the passage of this Act shall not affect any pending litigation." Acts 1945, 49th Leg., p. 543, ch. 329, Sec. 1.

Article V, Section 8 of the Constitution provides that "The District Court * * * shall have * * * such other jurisdiction, original and appellate, as may be provided by law." See *Oilmen's Reciprocal Ass'n. v. Franklin,* 116 Texas 59, 286 S.W. 195, 197.

Respondents were originally and properly joined and the statute makes the aggregate amount controlling for jurisdictional purposes. Article 1906a was enacted for the express purpose of curing what the Legislature described as a "jurisdictional defect" in *Long v. City of Wichita Falls,* 142 Texas 202, 176 S.W. 2d 936; the "defect" was the holding in Long that the claims of several plaintiffs cannot be added together to achieve a jurisdictional amount. *Southwestern Drug Co. v. Webster,* 246 S.W. 2d 241 (no writ hist.), and *Kasishke v. Ekern,* 278 S.W. 2d 274 (ref., n.r.e.), cited by petitioners, are not in point because of their reliance on Long and under their facts. In the case

before us there is proper joinder of claims aggregating more than $500.00 giving the district court jurisdiction under the express provisions of Article 1906a.

■ The second jurisdictional plea of petitioners asserts want of jurisdiction in the District Court of Smith County with respect to twelve of the respondents joining in the appeal suit who were not residents of Smith County, and is based on Article 5221b-4(i)[1] providing for court review of decisions of the Texas Employment Commission as follows:

"(i) Court review: Within ten (10) days after the decision of the Commission has become final, and not before, any party aggrieved thereby may secure judicial review thereof by commencing an action in any court of competent jurisdiction in the county of claimant's residence against the Commission for the review of its decision, in which action any other party to the proceeding before the Commission shall be made a defendant, provided that if a claimant is a non-resident of the State of Texas such action may be filed in a court of competent jurisdiction in Travis County, Texas, or in the county in Texas in which the last employer has his principal place of business, or in the county of claimant's last residence in Texas. * * *."

■ The right of an appeal thus created by the Act is expressly limited, as to residents of Texas, to a court of competent jurisdiction in the county of the claimant's residence, and as to non-residents of Texas, to one of the specified counties. These provisions are exclusive and come under the accepted rule that statutory proceedings are strictly governed by the statute of their creation. Those availing themselves of the statutory remedy are not free to select a forum not authorized by the statute creating the remedy. *Mingus v. Wadley,* 115 Texas 551, 285 S.W. 1084; *Alpha Petroleum Co. v. Terrell,* 122 Texas 257, 59 S.W. 2d 364; *Oilmen's Reciprocal Ass'n v. Franklin,* 116 Texas 59, 286 S.W. 195; *Texas Employment Commission v. Daniel,* 241 S.W. 2d 969 (Civ. App., no writ hist.). The trial court correctly dismissed the twelve respondents who were residents of counties of Texas other than Smith in which the appeal suit was brought.

■ We come now to the merits of the case. Respondents were employees of petitioner, General Electric Company, in its plant at Tyler. General Electric and the International Union of Electrical, Radio and Machine Workers, Local Union No. 782, AFL-

---

1. Acts 1936, 44th Leg., 3rd C.S., p. 1993, codified as Article 5221b, V.A.C.S., and as referred to herein.

CIO, representing the employees, entered into a collective bargaining contract for the period 1955 to 1960 containing the following provisions pertinent to the question before us:

"Article IX

"7.   Scheduling of Vacations

(a)   At time of annual shutdowns

Those Works shutting down annually shall consider the vacation season for eligible employees to run concurrently with the shutdown period * * *.

\*   \*   \*   \*   \*   \*

(c)   Postponement or Division of Vacation

It will not be permissible to postpone vacations from one year to another, or to omit vacations and draw vacation pay allowances in lieu thereof, except with the written approval of the Manager."

"8.   Time of Vacation Payment

Except as otherwise provided in this Article, vacation allowances shall be paid to an employee on or about the last day worked by him prior to the vacation scheduled for him. An employee who takes his vacation prior to the date upon which he becomes eligible, will receive payment (computed in accordance with Section 6 above) after he becomes eligible. Additional day or days for which an employee may qualify later in the year may be taken at the time of the regular vacation and payment for such time of the regular vacation and payment for such time (computed in accordance with Section 6 above) will be made after the employee has qualified."

The plant commenced preliminary operations about June 1, 1956, and approached normal operations by the following January or February, 1957. On February 20, 1957, General Electric announced that it would shut down the plant beginning August 2, 1957, and until August 19, 1957, and did so. The shutdown was pursuant to paragraph 7(a) of Article IX of the collective bargaining contract, above quoted, and was not agreed to—in fact was protested—by the Union.

The respondents received no vacation pay on or before August 2, 1957, for the first week of the shutdown (the last two weeks are not involved in this case) because they had not passed their first anniversary date on August 2, 1957, and under the contract were not eligible for vacation, and for vacation pay, on such date. All of the respondents, however, could have reached their first anniversary date subsequent to August 2, 1957, and during the calendar year of 1957.

Respondents filed their claims for benefits for the week of August 4, 1957, which were denied by the Commission upon the basis of the contractual provisions herein quoted, the crucial reasoning of the Commission being stated as follows:

"Those employees whose service anniversary date was subsequent to the shutdown period and before the end of the calendar year, took their vacation during the first week of the shutdown and under the contract will receive pay for such vacation after their service anniversary date."

It was established upon the appeal trial in the district court (over the objection of respondents) that all of the respondents did in fact reach their first anniversary date subsequent to August 2, 1957, and during the year 1957, and were in fact paid vacation pay for the week of August 4, 1957, at the time they became eligible therefor.

Article 5221b-17(1) and (n) define "Total unemployment" and "Wages" as follows: "An individual shall be deemed 'totally unemployed' in any benefit period during which he performs no services and with respect to which no wages are payable to him"; " 'Wages' means all remuneration for personal services, including commissions and bonuses * * *."

Respondents contend, first, that evidence of the actual payments to them subsequent to August 2, 1957, is inadmissible since these were "transactions and events which occur after the crucial date that fixes the status of a claimant before an administrative agency", and which "supply support for the administrative decision which itself shows that the agency did not consider the evidence"; and, second, that if the sums paid to respondents are wages, "they are not payable with respect to the first week of the shutdown."

The three companion cases of *Texas Employment Commission v. Huey*, 342 S.W. 2r 544, *Texas Employment Commission v.*

*Hansen,* 342 S.W. 2d 551, and *Texas Employment Commission v. Amlin,* 343 S.W. 2d 249, considered questions of statutory construction in the light of the collective bargaining contracts and facts there involved, and it was held in each case that the employees were entitled to benefits. Recitations in the opinions point out the controlling difference between these cases, and the case at bar:

In Huey: "Others, including Clara Huey et al who had not worked long enough to be entitled to vacations, were laid off during the shutdown * * *. There is no provision for any vacation for those like Clara Huey who had worked less time."

In Hansen: "The contract is not one of voluntary unemployment for those without seniority during a layoff period but deals with the treatment of employees with seniority during the shutdown."

In Amlin: "Those with less than a year of seniority received no pay."

In the case now before us the collective bargaining contract specifically provides for a vacation period to run concurrently with a plant shutdown ordered by General Electric; that the employees will take their vacation at such time whether eligible or not; and that both employees eligible at the time and those becoming eligible later in the calendar year will receive pay for the vacation. Under such contract circumstances we are of the view that the right to benefits, or not, of those employees not eligible at the time of the shutdown-vacation necessarily must be determined by facts subsequent during the remainder of the calendar year.

It is to be emphasized that the contract is one voluntarily entered into by, and in the interest of, the employees through their Union representative; that the contract, among other things, guarantees payment to the employees for a vacation running concurrently with a plant shutdown, with such payment to be either at the time of the vacation or later during the calendar year; and that all employees are treated alike, compensation-wise, in the overall contractual plan.

We are therefore clear in the view that the sums so received by all the employees are wages paid with respect to the vacation-shutdown period; and that proof of the receipt of vacation pay subsequent to the vacation period, in connection with claims for

unemployment benefits for the vacation period, is proper and necessary in adjudicating the claims.

It is a concomitant to the above holdings that an employee who does not in fact reach the required anniversary date during the calendar year, and who does not therefore receive pay for the vacation period, would be entitled to establish such facts subsequent, and to be paid benefits, since he has received no wages with respect to the vacation period. In this connection it may be noted that Article 5221b-4(a) provides that "Claims for benefits shall be made in accordance with such regulations as the Commission may prescribe." Thereunder the Commission may establish an appropriate procedure for the filing of claims by such employees.

Respondents cite *Western Union Telegraph Co. v. Texas Employment Commission,* 243 S.W. 2d 217 (Dismissed by this Court as without jurisdiction with per curiam opinion, 243 S.W. 2d 154) for what they say is "the controlling principle", namely, "that vacation pay is allocable to the period in which services are performed. Since no services were performed the first week of the shutdown, the pay is allocable to other periods."

Apart from the fact that the Western Union case concerned severance pay only, it is readily apparent that if carried to its logical conclusion, the argument of respondents based on Western Union would mean that employees would be entitled to benefits for *all* vacation periods (during which, of course, no services are actually performed) notwithstanding eligibility for, and payment of, vacation pay *at the time* of the vacation period. It is noted, for example, that the record in the case at bar reflects the fact that there was a group of employees of General Electric with sufficient seniority to be eligible for, and who received, vacation pay on August 2, 1957, for the week in question. No appeal is here for them on the ground that the services performed to reach seniority were allocable to the period in which the services were performed, rather than to the vacation period, but under the reasoning advanced by respondents these employees would also be entitled to benefits for the vacation upon the same basis as that claimed by respondents, namely, that under Western Union wages paid for vacation are not "with respect to" the vacation but to the time when services were actually performed, under the statutory definition of "total unemployment".

We hold, therefore, under the contract of the parties and the facts we have reviewed, that wages were paid to respondents

for the vacation period in question, and that during such time respondents were not totally unemployed under the Act.

■ The fourth counterpoint of respondents is as follows:

"The Court of Civil Appeals correctly held that the Collective Bargaining Agreement between IUE [the Union] and GE [General Electric Company] could not operate to waive claimants' rights under the Texas Unemployment Compensation Act," referring to Article 5221b-13(a), which provides that "No agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this Act shall be valid."

There is nothing in the collective bargaining agreement which constitutes a waiver of rights to benefits, or other rights, of the individual employee. It cannot be said that an agreement for a vacation period coincident with a plant shutdown which may be ordered by management, and for vacation pay therefor upon reaching the requisite seniority, is an agreement waiving benefits or rights within the contemplation and purposes of the above-quoted prohibitions of the Act. To hold that such an agreement is prohibited would mean that an employee (and the Union for him) is restrained by the Act from contracting for vacations with pay. See *Jackson v. Minneapolis-Honeywell Regulator Co.*, 47 N.W. 2d 449; *I. M. Dach Underwear Co. v. Michigan Employment Security Commission*, 80 N.W. 2d 193.

The judgment of the Court of Civil Appeals awarding recovery to the twelve respondents who are not residents of Smith County is reversed and the judgment of the District Court dismissing them from this suit is affirmed. The judgment of the Court of Civil Appeals awarding recovery to the remaining respondents is reversed and the judgment of the District Court is affirmed.

Associate Justice Culver not sitting.

Opinion delivered November 22, 1961.