**DIETZ MEMORIAL COMPANY,**
**Appellant,**

v.

**TEXAS STEEL BUILDING**
**COMPANY, Appellee.**

**No. 5943.**

Court of Civil Appeals of Texas, Waco.

March 8, 1979.

Rehearing Denied March 29, 1979.

John B. McNamara, McNamara & McNamara, Waco, for appellant.

Fred Horner and Vance Dunnam, Dunnam, Dunnam & Dunnam, Waco, for appellee.

HALL, Justice.

Plaintiff-appellee Texas Steel Building Company and defendant-appellant Dietz Memorial Company entered into a written contract under which plaintiff agreed to provide the material and labor and make certain repairs and improvements to defendant's metal building. Plaintiff was required among other duties to "furnish and install white acoustical spray insulation to the entire roof, walls, and all red iron, except crane beams, rails and columns, of [defendant's] plant building to a minimum thickness of ½-inch throughout the job" and to "clean and wash down all plastic panel skylights in building." The total contract price was $14,266.00. Plaintiff performed under the contract. Defendant paid $2,926.00, but refused to make further payment. Plaintiff brought this suit for the balance of $11,340.00, alleging it had performed its obligations under the contract. Plaintiff also pleaded for reasonable attorneys' fees.

Defendant answered with a general denial, a special denial, and a counterclaim, alleging that plaintiff had subcontracted the insulation work and the skylight cleaning job to E. O. Wood Company; that the work performed by the subcontractor was not done in a good and workmanlike manner and was defective; that the installed insulation deviated from the contract in many pleaded particulars including that it was loosely applied and did not adhere firmly enough to the building to prevent it from falling off the roof, walls, and red iron, and from being knocked off upon any reasonable contact; and that the skylights were not cleaned and washed down in accordance with the contract. Defendant alleged that proper correction of the deficiencies and defects in the work performed by plaintiff and its subcontractor would necessitate removal of the existing insulation, cleaning of the surfaces, application of a base coat of adhesive, and then reapplication of the insulation; and that the cost of such work would be $18,886.62. Defendant prayed for the recovery of $7,546.62 (the difference between the cost of the asserted remedial work and the balance due on the contract), and for reasonable attorneys' fees.

Plaintiff answered defendant's counterclaim with a general denial. Plaintiff also impleaded its subcontractor E. O. Wood Company and, alleging an indemnity agreement between them, prayed for judgment against the subcontractor for any recovery by defendant against plaintiff.

The case was tried to a jury. Defendant conceded during the trial it was not complaining about the cleaning of the skylights. Excepting proof on attorneys' fees, the single issue developed on the trial was whether the insulation work was properly performed by plaintiff's subcontractor. Plaintiff's witnesses testified that the work was done

in a good and workmanlike manner; defendant's witnesses testified that it was not.

During the trial plaintiff asked two of its witnesses whether the contract was "substantially completed." Defendant objected to the question on both occasions on the ground that evidence of substantial performance was not supported by the pleadings because plaintiff had alleged and sued only on a completed contract. The objections were overruled, and both witnesses answered the questions favorably to plaintiff. After the parties had rested their proof, but before the case went to the jury, plaintiff was permitted over defendant's objection to file a trial amendment pleading substantial performance.

Related to this appeal, the jury made the following answers to the special issues:

No. 1: Failed to find that plaintiff "fully performed its obligations under the contract in question in a good and workmanlike manner."

No. 2: Found that plaintiff "substantially performed its obligations under the contract."

No. 5: Found that "the reasonable cost of remedying [the] defects or omissions in [plaintiff's] material and workmanship in performing [the] contract" was "NONE."

Judgment was rendered on the verdict awarding plaintiff $11,340.00 (the unpaid balance on the full contract price), and prejudgment interest on that amount. Apparently upon a stipulation not of record, plaintiff was also awarded attorneys' fees.

Defendant appeals. We affirm the judgment.

Defendant's two grounds for reversal are (1) that the court erred in permitting plaintiff to file the trial amendment, pleading substantial performance, on the last day of the trial; and (2) that the court erred "in awarding judgment for plaintiff for the full balance due on the contract, when the jury found that the contract had only been substantially performed."

A party suing upon a completed building or construction contract may recover upon proof of only substantial performance of the contract. *Linch v. Paris Lumber & Grain Elevator Co.*, 80 Tex. 23, 15 S.W. 208, 213 (1891); *Atkinson v. Jackson Bros.*, 270 S.W. 848, 851 (Tex.Com.App. 1925, holding approved); *Pacific Coast Engineering Co. v. Trinity Const. Co.*, 410 S.W.2d 797, 799 (Tex.Civ.App.—Waco 1967, writ ref'd n. r. e.); 10 Tex.Jur.2d 25, Building Contracts § 21. It follows, therefore, that the court did not err in permitting plaintiff to expressly plead substantial performance by trial amendment after the proof had ended. The pleading was unnecessary and no harm could have been caused defendant by it. See, especially, *Pacific Coast Engineering Co. v. Trinity Const. Co.*, supra.

Additionally, the allowance or not of a trial amendment is addressed to the sound discretion of the trial court; and the question of whether the court's ruling was an abuse of discretion must be determined from a review of the entire record of the case. *Vermillion v. Haynes*, 147 Tex. 359, 215 S.W.2d 605, 609 (1948); *Aubin v. Hunsucker*, 481 S.W.2d 952, 955 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.). In our case, it was plaintiff's position before the jury that the insulation work was fully performed in a proper and workmanlike manner. It was defendant's position that the work was poorly done; and that the insulation applied by plaintiff's subcontractor would have to be completely removed and new insulation installed at the cost of $18,887.62. When the parties ended their proof, they had established in great detail their respective assertions of what had been done and what had not been done by the subcontractor on the insulation job. Excluding the previously mentioned answers to plaintiff's witnesses permitted over defendant's objection, the evidence adduced by the parties would have supported findings of (1) full and proper performance of the insulation work or (2) wholly improper performance; and (3) stages of completion between those extremes, including substantial performance. With the record in that state,

we hold the court did not abuse its discretion in permitting the trial amendment.

■ Where there is substantial performance, the measure of the contractor's recovery is the contract price less the reasonable cost of remedying the defects or omissions in such way as to make the work conform to the contract. *Pacific Coast Engineering Co. v. Trinity Const. Co.*, supra, at 410 S.W.2d 799. "The principle underlying cases of this general character is that the party in default can never gain by his default, and the other party can never be permitted to lose by it. Hence where a building contractor has substantially performed his contract, he ordinarily may recover the contract price, less a deduction to reimburse or compensate the owner for the contractor's failure fully to complete his contract. . . . The doctrine of substantial performance necessarily includes compensation [to the owner] for all defects which are not so slight and insignificant as to be safely overlooked on the principle of *de minimis non curet lex.*" *Atkinson v. Jackson Bros.*, supra, at 270 S.W. 851.

In our case the jury found that plaintiff substantially performed the insulation work, and that there would be no cost to remedy the defects or omissions in it. Defendant argues that the jury's answer of "none" to the cost of the remedial work is not supported by any evidence. We overrule that contention.

Defendant's building houses an industrial plant for the manufacture of cemetery monuments from "gigantic pieces of marble." Large cranes, heavy saws and other heavy equipment are located in the building for that purpose. The building is steel-framed with sheet-iron on the sides and roof. It is 240 feet long and 80 feet wide; the sides are 24 feet high; and the roof is gabled. The manufacture of the monuments generates a tremendous amount of dust which settles to at least one-half inch thickness in some areas of the plant. The dust also settles on the sides of the building.

To avoid interfering with defendant's business, plaintiff agreed to and did apply the insulation on weekends. It was necessary for plaintiff to work over and around the equipment in the plant. Plaintiff applied approximately 34,000 square feet of insulation to the walls and ceiling. Plaintiff's witness explained the method of application in these words: "It's fed into a hopper. It's much like the insulation machines that blow the loose fill into attics. It's blown with air power and at the end of the hose, there's an orifice around the end of the hose with nozzles and this is fed by a glue line and the glue is pumped at a pressure of approximately 100 pounds per square inch. The glue and the material meet in the air and then when it hits the surface its pointed at, it sticks." Proper application entails a normal 30% "overspray" of the material which falls to the floor.

There was much conflict in the evidence relating to the quality of the insulation job. Defendant's proof showed spots and cracks in the insulation in the ceiling, partially loose strips, bare areas on the walls, uncleaned side windows, ceiling air vents allegedly clogged with insulation material, overspray left on the machinery and other equipment, insulation sprayed over electrical wall sockets, and other asserted defects and omissions to establish noncompliance with the contract. Defendant's witnesses reasoned that the defects and omissions were caused by the subcontractor's failure to use the right spray machine and the right adhesive mixture, and by poor overall workmanship. Plaintiff's proof showed a proper, standard job, done in a good and workmanlike manner under difficult circumstances, which permitted small spots here and there; that the ceiling cracks were normal and expected and were caused by expansion and contraction of the roof from daily heating and cooling and cannot be prevented; that birds ("quite a few in number" according to defendant's executive officer) entered defendant's plant and pulled at and tore the insulation loose for making nests; that bare areas on the wall, for several particularized reasons, were caused by defendant; that the cleaning of the side windows (which was not part of the written

agreement) was inconsequential but that plaintiff had nevertheless offered to pay for the cleaning if defendant would have it done; that defendant's first complaint about the ceiling vents was made at the time of trial, and that the vents were in fact working; that it was defendant's duty to protect its equipment from the over-spray; that, in effect, all the conditions complained about by defendant which related to the actual application of the insulation were normal under the circumstances and did not detract from a good and workmanlike job; and that defendant's complaints were hypercritical.

It was the jury's duty and prerogative to sort out the testimony it believed most credible, and determine the weight to be given to all the evidence. Additionally, there was a jury view in this case without objection by the parties. Of course, the record does not show what was learned by the jurors on the visit to defendant's plant, but we must assume it supported the verdict.

▆ It is settled that in determining a "no evidence" complaint we must consider only the evidence and inferences which support the finding. *Lucas v. Hartford Accident And Indemnity Company*, 552 S.W.2d 796, 797 (Tex.1977). If there is any factual theory under the conflicting evidence and inferences upon which the finding can be based the complaint must be overruled. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 797 (1951).

▆ The evidence shows that the electrical outlet boxes located in the area where the insulation work was done were sprayed and covered with the insulation. Each box also contained a light switch. Plaintiff's witness Jordan Pfumtmer testified that he "wouldn't classify that as good workmanship," that "normally you would put some tape across that." However, he also testified that failure to mask the boxes "does not affect the quality of the insulation value of the job at all, it simply means it takes a few minutes to clean off what should have been protected to start with. It doesn't hurt anything. It doesn't hurt a thing in the world."

As we have said, the various contentions of the parties were developed in detail on the trial. Additionally, we must assume that during the visit to defendant's premises the jury viewed and considered every alleged defect and omission raised by defendant. We hold that under the evidence the jury could reasonably have determined that all the insulation work except the spraying of insulation on the electric outlet boxes was done by plaintiff in a good and workmanlike manner; and that the cleaning of the outlet boxes was an inconsequential "no cost" item. Those determinations support the jury's verdict, including the answer of "none" to special issue number 5. See, *Beck v. Lawler*, 422 S.W.2d 816, 818 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.).

Defendant asserts that plaintiff's witness Pfumtmer testified there were defects and omissions in the original insulation work which needed correction, and that the cost of correction would be at least $298.00.

Plaintiff completed the job in April, 1977. The trial was held in May, 1978. Pfumtmer testified that at the time of trial he found no more than 100 square feet of the insulation which needed repairing, and that the cost for labor and material for the work would total $298.00. However, we agree with plaintiff that the jury was reasonably entitled to believe the witness intended that testimony as responsive to an initial question asking for the cost of repairs "to make the building and the insulation job as good as it was when it was completed." Throughout his testimony (excepting his testimony about the electrical outlet boxes set forth above, which he considered inconsequential) the witness steadfastly maintained that all the insulation work was originally completed in a good and workmanlike manner.

Defendant's points and contentions are overruled. The judgment is affirmed.