Calvin W. WILLIAMS, et al., Appellants,

v.

L. A. BACK, d/b/a Back Plumbing Company, Appellee.

No. 13230.

Court of Appeals of Texas,
Austin.

Oct. 7, 1981.

James L. Cutcher, Barkley & Cutcher, Taylor, for appellants.

Dan E. Mayfield, Jr., Sheehy, Lovelace & Mayfield, Waco, for appellee.

POWERS, Justice.

Appellee, L. A. Back, sued appellant, Calvin W. Williams, to recover sums allegedly owed for labor and materials furnished by appellee under contracts pertaining to two construction projects, one in Georgetown, Texas, and the other in Hearne, Texas. The claims were founded upon two separate contracts, the first partly written and partly oral (the Georgetown project) and the second oral (the Hearne project). Appellee also sued for statutory attorney's fees under Tex.Rev.Civ.Stat.Ann. art. 2226 and for foreclosure of his statutory liens.

Based upon the jury's answers to special issues, the trial court awarded appellee judgment as follows: $3,470.00 for the Georgetown project; $1,010.13 for the Hearne project; and a combined amount of $6,000.00 in statutory attorney's fees, to be reduced by $1,200.00 and $1,500.00 in the event no appeals were taken to the Court of Civil Appeals and to the Supreme Court of Texas, respectively.

In this appeal, appellant contends that the trial court abused its discretion by denying him leave to file a trial amendment. Appellant requested leave to file the amendment when appellee offered in evidence a statement of account he had earlier mailed to appellant, but which appellant never received. The statement was received in evidence.

The statement is dated September 25, 1975, and under the heading "charges and credits" refers to the Hearne project and claims a "balance" of $1,060.64. This amount is broken down on the statement into two parts: a principal sum of $1,010.13 and $50.51 described as "½% per mo 12/13/75." In addition, there is stamped on the statement the following notation:

"If this account is not paid by 12/5/75 it will be referred to our Credit Protective Service Division of I. C. System, Inc."

Appellee removed the statement from its sealed envelope in open court at the time he offered it into evidence. Although the envelope was correctly addressed to appellant, the envelope bears notations by the postal service which read: "Return to Writer" and "Undeliverable as Addressed." On seeing the statement for the first time, in open court, appellant advised the court of his contention that it constituted a charge of usury under the holding in *Houston Sash & Door Co. v. Heaner*, 577 S.W.2d 217 (Tex. 1979). He requested a mistrial and when his request was denied, after hearing, appellant asked leave to file a trial amendment pleading the defense and counterclaim based upon the asserted charge of usury. The trial court denied him leave to file the amendment, which he contends was an abuse of discretion.

Rule 66, Tex.R.Civ.P., provides that the trial court shall freely allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby. The trial court has wide discretion in its application of this rule. *Vermillion v. Haynes*, 147 Tex. 359, 215 S.W.2d 605 (1948). Accordingly, the rule is liberally construed, as the word "freely," contained therein, might indicate. *City of Houston v.*

*Hagman*, 347 S.W.2d 355 (Tex.Civ.App.— Houston 1961, writ ref'd n. r. e.).

When discretion is allowed the trial court, it must be exercised in accordance with fixed principles or rules of law. The operative rule in this instance is that leave of court shall be granted freely unless the party resisting the amendment makes a showing of surprise, or that he will be prejudiced in the maintenance of his suit if the amendment is allowed. *Hardin v. Hardin*, 597 S.W.2d 347 (Tex.1980) (Campbell, J., concurring). Appellee made no such showing or attempted showing in this case.

Appellee objected to the filing of the trial amendment solely on the following grounds: the case had been pending for four to five years; any counterclaim would be barred by the statute of limitations; and the trial amendment was "without merit." It is apparent that none of these suggest surprise or prejudice to the maintenance of appellee's actions on their merits. The statement that the amendment was "without merit" amounted to no more than appellee's conclusion or opinion, the soundness of which was open to question. *See Vermillion v. Haynes, supra.* Moreover, we cannot say, *as a matter of law*, that a counterclaim or defense of usury could not be founded upon the statement in question because appellant never received it.

Usury is the contracting for, charging or receiving of interest in an amount greater than that allowed by law. Tex.Rev.Civ. Stat.Ann. art. 5069–1.06. There are no contentions that appellee contracted for or collected usury; the issue before us is whether, by reason of the undelivered statement of account, he *charged* usury. Appellee takes the not implausible position that there could be no charging of usury, since it was conclusively shown at trial that appellant never received the letter which contained the statement. We cannot, however, agree with the statutory interpretation which appellee's position requires.

Usury is neither a crime nor a tort in the ordinary sense. *Harned v. E–Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81

(1953). Article 5069–1.06 creates a statutory cause of action that is *sui generis.*[1] When such an action is founded upon the creditor's charge of usurious interest, the actionable conduct is that of the creditor acting unilaterally and independently. In *Windhorst v. Adcock Pipe & Supply,* 547 S.W.2d 260 (Tex.1977) (per curiam), the Supreme Court of Texas said:

"By *unilaterally* charging the one and one-half percent per month 'finance charge', the retailer in this case charged more than ten percent per annum, and is, therefore, liable for penalties. (emphasis added)."

■ The reaction of the debtor to the charging of usury and any financial or other consequences to him are immaterial to the cause of action created by the statute, for his "damages" are the specified sums that the statute declares shall be forfeited by the creditor or assessed against him. They are not measured by any injury to the debtor—his payment is not necessary to an action based upon the charging of usury. What then constitutes a unilateral act of charging usury?

In *Moore v. Sabine National Bank,* 527 S.W.2d 209 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.), this Court determined that:

"... a charge could be 'the debiting of an amount due or more certainly, an act by the promissee constituting or implying a demand for its payment, e. g., the inclusion in a statement of indebtedness to the debtor.'"

See also *Mecey v. Seggern,* 596 S.W.2d 924 (Tex.Civ.App.—Austin 1980, no writ). The statement of account involved in the present case quite clearly constitutes a demand for payment of the amount claimed to be usurious.

In *Hagar v. Williams,* 593 S.W.2d 783 (Tex.Civ.App.—Amarillo 1979, no writ), the court held that the creditor's unilateral action in entering a usurious amount of interest on a statement of account constituted the charging of usury within the meaning of the statute. The court reasoned:

"Logically, the debtor, without knowledge from some source of the interest charged to his account, would have no occasion to seek any recourse provided by the statute, but it does not follow that the mailing of a statement showing the interest charged and a demand for its payment are prerequisite for a charge of interest within the meaning of the statute."

We agree.

These cases, taken together, correctly stand for the proposition that the foundation of the statutory action, in the case of a creditor who charges usury, is the independent, unilateral claim for usury made by the creditor and not any communication of that charge to the debtor or any effect produced thereby in the debtor. Appellee would distinguish these cases on the basis that in each of them there existed some evidence that the debtor actually received the statements which contained the claim alleged to be usurious. The distinction is immaterial.

The word "charges" used in the statute refers intrinsically to a unilateral action by the creditor or lender. The statute itself makes no requirement that the charge be actually communicated to the debtor. The statute is not ambiguous and we are required, therefore, to apply it literally. In addition, there exist other fundamental reasons which forbid our adoption of appellee's theory that there must be actual communication of the claim to the debtor.

Article 5069–1.01, *et seq.,* is aimed at the regulation of business practices that the legislature concluded were unethical or un-

1. "(1) Any person who ... charges ... interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest ... charged, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error. (Amended effective August 27, 1979, to provide for the forfeiture of three times the amount of interest over the lawful amount, but not less than $2,000.00 or twenty percent of the principal, whichever is the smaller sum)."

desirable. This regulation takes several forms. One method of regulation relied upon in the statute is that of providing a statutory cause of action in favor of individuals who have been the object of an unethical or undesirable business practice proscribed by the statute. In the case of borrowers and the purchasers of goods and services on credit, the legislature intended to protect them individually from excessive interest, but it intended also to curb such charges generally by providing the statutory cause of action as a means of policing the practice of assessing usurious interest unilaterally, as well as by the debtor's assent. *See Declaration of Legislative Intent*, 15 Tex.Rev.Civ.Stat.Ann. 1–2 (Vernon 1971). To engraft upon the statutory action the additional element of actual notice would, in effect, circumvent the regulatory purpose of the statute and the legislative intent behind it. Furthermore, when such statutory actions are created by the legislature, they are governed strictly by the statute of their creation. We are, therefore, not free to engraft upon the cause of action any additional elements that may appear to us to be wise or expedient. *Texas Employment Comm'n v. International Union of E., R. & M. Workers*, 163 Tex. 135, 352 S.W.2d 252 (1961). We are not free, for example, to engraft upon the statutory action claimed by appellant the additional element of actual receipt of notice that the creditor had entered upon his books of account, or other documents reflecting the particulars and status of the transaction, a usurious amount of interest.

In holding that the creditor's unilateral claim for usury is sufficient to invoke the statutory action, this Court refuses to follow *Thomas Conveyor Co. v. Portec, Inc.*, 572 S.W.2d 361 (Tex.Civ.App.—Waco 1978, no writ). In *Portec*, the creditor affixed to his invoices a red label providing "our terms are 30 days net—1½% per month finance charge applicable thereafter." The debtor alleged that the creditor's affixing the label to the invoices constituted the charging of usury within the meaning of *Windhorst*. The Waco court disagreed, stating:

"In *Windhorst* the buyer was actually billed and charged the purchaser for the finance charges. As noted, defendant herein *did not bill for any interest*, or demand payment for same, and *never accrued a finance charge on its books.* The evidence was that plaintiff attached the sticker to *invoices* to encourage customers to pay their bills, and that no action was ever taken to actually charge or collect such finance charge. We conclude with the trial court that the affixing of such label to the *invoices* does not as a matter of law constitute a usurious charge." (emphasis added)

Similarly, in *Killebrew v. Bartlett*, 568 S.W.2d 915 (Tex.Civ.App.—Amarillo 1978, no writ), the creditor's invoice or "merchandise ticket" contained the printed statement that asserted "1½% Charged Each Month on Your Unpaid Balance 30 Days After Purchase, 50¢ Minimum Charge."

In *Portec* and in *Killebrew*, the creditor denied an intent to charge interest at all and asserted that he did not do so, either on his books or elsewhere, after sending the invoice. An invoice is merely a detailed statement of the nature, quantity and cost of the goods sold. *See Federal Ins. Co. v. Munden*, 203 S.W. 917 (Tex.Civ.App.—Dallas 1918, no writ). It normally does not purport to set out any terms of the sale or demand for payment. In contrast, the claim for interest in this case was made on what purports to be a statement of account—a statement of "*charges* and credits"—which, in addition, contained an apparent threat to refer the "account" to a collection agency if payment was not made by the date demanded. Were we inclined to follow any aspect of the holdings in *Portec* and *Killebrew*, we would not do so in this case because of this important distinction. We believe, however, that *Portec* and *Killebrew* should be limited to their specific facts. We may not say, on the basis of these cases, that the statement in question in this case did not, as a matter of law, constitute a charge of usury. And we may suggest that there is no inherent reason why a usurious demand or claim may not be contained in an invoice, a letter, a state-

ment of account, a ledger sheet or other book or document. The basis of the action is a claim or demand for usury made by the creditor and the vehicle for the claim or demand is immaterial except, perhaps, as an evidentiary fact.

The effect of the trial court's denying appellant leave to amend his pleadings to set up the matter of usury was to declare, as a matter of law, that a charge of usury could not exist where appellant did not receive the statement of account. There may be a legitimate question of whether the statement did constitute a claim or demand for usury in the circumstances of the case. We express no opinion either way as to whether it does. We merely find that justice would have been better served in this instance by allowing the amendment and a full inquiry, development and adjudication of the question. On the basis that trial amendments should be liberally granted unless it be shown that the resisting party will be surprised or prejudiced in the maintenance of his action, we hold the trial court abused its discretion in denying appellant the leave requested.

■ By other points of error, appellant complains of the trial court's allowing appellee to file a trial amendment and to submit a special issue which combined into one the appellee's claims for statutory attorney's fees arising from both the Georgetown and Hearne claims. The trial amendment was granted after both parties had rested and closed.

Appellee's pleadings alleged two independent contracts as grounds for his primary claims, one for each project. He did not amend this part of his pleadings and continued to make independent claims under each contract. The two primary claims were submitted to the jury in separate issues. In contrast, the special issue relative to attorney's fees was submitted as follows:

> "What sum of money, if any, do you find from a preponderance of the evidence would be reasonable attorney's fees for the services of Plaintiff's attorney(s), in relation to the amount of time *expended in this case*, as follows . . ." (emphasis added)

The jury was then required to answer with specific amounts for legal services rendered in the preparation and trial of the case and for legal services in the Court of Civil Appeals and in the Supreme Court. No part of the charge distinguished the amounts of attorney's fees recoverable for the two primary claims, one arising from the Georgetown contract and the other from the Hearne contract.

■ Article 2226, *supra*, under which appellant sought attorney's fees, provides for the award of such fees if "presentment" thereof is made to the debtor and the claim is not paid within thirty days. Filing of suit is not a presentment within the meaning of the statute. The statute is penal in nature and is to be strictly construed. *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893 (Tex.1962).

To recover such fees in this case, appellee was required to show that he made a specific demand of appellant relative to *each* of his two claims, one under the Hearne contract and the other under the Georgetown contract. The evidence reflects that no sufficient presentment was made with respect to appellee's claim under the Hearne contract. Appellant had the burden of proof in that regard and the burden of submitting a correct issue on attorney's fees. The only evidence relied upon to constitute a presentment of the Hearne claim was the statement of account discussed at length above with reference to the usury issue. It is undisputed that appellant never received the statement of account. Where the debtor does not receive the writing alleged to constitute a "presentment," there is no presentment within the meaning of Article 2226. *See Rosenthal v. Executive Car Leasing Co.*, 435 S.W.2d 168 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ).

Appellant clearly was entitled to obtain a jury finding as to attorney's fees relative to the Georgetown claim; with equal clarity, however, he was not entitled to such a finding relative to the Hearne claim. The trial court erred in allowing the jury to assess reasonable attorney's fees based upon

the services of appellee's attorney in the entire case. There is no method by which this Court may ascertain what division, if any, was made between the two claims in the minds of the jury. We suspect there was none. We may not, as appellant suggests, merely deduct from the total amount found by the jury the sum alleged by him as reasonable attorney's fees for the Hearne claim in the pleading that was amended by him to combine the attorney's fees claims. The claim for attorney's fees is, in each instance, intertwined with and dependent upon the primary claim. There can be no separate or severable claim for statutory attorney's fees independent of the primary claim. *Huff v. Fidelity Union Life Ins. Co.*, 158 Tex. 433, 312 S.W.2d 493 (1958). Moreover, the two claims for statutory attorney's fees were intertwined even further by combining them so that each rested equally upon the two primary claims. This was error.

We find that the errors of the trial court discussed above amounted to a denial of the rights of appellant that was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the trial court and requires that we reverse that judgment. Tex.R.Civ.P. 434. There exists no basis for severance of the issues and we must therefore remand the case for a new trial. *Id.*

PHILLIPS, Chief Justice, dissenting.

I respectfully dissent. I would hold that, as a matter of law, a creditor cannot charge usurious interest without the debtor's actual or constructive knowledge. The statute involved, Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (1971), is penal in nature and must be *strictly* construed. *Houston Sash & Door Co., Inc. v. Heaner*, 577 S.W.2d 217 (Tex. 1979). In sending the statement in question which never reached appellant, appellee has only *attempted* to charge usurious interest. Art. 5069–1.06 requires that appellee actually charge usurious interest. Even the majority opinion states that "[t]he basis of the action is a claim or demand for usury . . . ." A claim or demand cannot be made by a

creditor unless the debtor is aware of it. A creditor, standing alone in his office, who forcefully writes "Debtor, pay me usurious interest," and then fails to give it to the debtor has not charged anything.

The majority opinion relies heavily on the words "unilaterally charging" used by the Supreme Court in *Windhorst v. Adcock Pipe and Supply*, 547 S.W.2d 260 (Tex.1977). A careful reading of the opinion shows that the Court was merely contrasting a charge for interest instituted solely by the creditor as opposed to interest "contracted for" by both the creditor and the debtor. The definition of the word "charge" was not discussed. The Court of Civil Appeals' opinion in *Windhorst*, 542 S.W.2d 222, clearly shows that the debtor, as in every case cited by the majority, had actual notice of the interest demanded by the creditor.

Defining "charge" as including knowledge by the debtor is not engrafting an additional element to art. 5069–1.06. It is merely stating that a charge cannot be made in a vacuum. The debtor must be aware of the demand before it is a charge.