OPINION

                                                                     

                                                     No. 04-09-00465-CV

 

                                           George
GEIS d/b/a Rio Architects,

                                                              Appellant

 

                                                                    v.

 

                                                  COLINA DEL RIO, LP,

                                                               Appellee

 

                        From the 408th Judicial
District Court, Bexar County, Texas

                                              Trial Court
No. 2007-CI-07993

                                   Honorable Michael
P. Peden, Judge Presiding

 

Opinion by:   Karen Angelini, Justice

 

Sitting:          Catherine Stone, Chief Justice

Karen Angelini,
Justice

Rebecca Simmons,
Justice 

 

Delivered and
Filed:  May 4, 2011  

 

OPINION WITHDRAWN; JUDGMENT AFFIRMED;
MOTION TO PUBLISH GRANTED; MOTION FOR REHEARING EN BANC DENIED AS MOOT

 

Appellant
George Geis d/b/a Rio Architects (“Geis”) appeals from a judgment requiring him
to pay appellee Colina Del Rio, LP (“Colina”) $881,958.00 in damages plus
interest, attorney’s fees, and costs in a suit involving an architectural
contract. Colina sued Geis for rescission of the contract, claiming the
contract was unlawful because Rio Architects failed to employ or associate with
a licensed architect when the architectural plans were created. Alternatively,
Colina sued for breach of contract, claiming the architectural services and
plans provided by Rio Architects were flawed and insufficient. A non-jury trial
was held and judgment was rendered in favor of Colina on both theories of
recovery. Geis appealed.

A
panel of this court issued a memorandum opinion and judgment on July 21, 2010,
affirming the trial court’s judgment. Thereafter, Geis filed a motion for
rehearing and a motion to publish the opinion. Both motions were denied by the
panel. Geis then filed a motion seeking reconsideration of the denial of his
motion to publish. Geis also filed a motion for rehearing en banc. In his
post-opinion motions, Geis asserts our initial opinion “modifie[d] the existing
rule that in pari delicto is a defense to breach of contract.” Geis
further asserts our initial opinion “ignored the possibility that in pari
delicto would prevent Appellee[] from recovering on [its] breach of
contract claim when it affirmed the judgment on breach of contract grounds
without even discussing the in pari delicto defense.”

 On
our own motion, we withdraw our opinion and judgment dated July 21, 2010, and
substitute the following opinion and judgment to more fully address the defense
of in pari delicto. Because appellant’s motion for rehearing en banc addresses
our initial opinion and not our substituted opinion, appellant’s motion for
rehearing en banc is denied as moot. Appellant’s motion to publish is granted.
The trial court’s judgment is affirmed.

Factual and Procedural Background

1. The
Villaje Del Rio Development Project

Geis
owns Rio Architects, which is a sole proprietorship. Geis is a real estate
developer; Geis is not an architect. 

Geis
became interested in developing real property located near downtown San
Antonio, Texas, into a mixed-use residential, commercial, and retail center
called Villaje Del Rio. Geis formed Villaje Del Rio, Ltd. (“Villaje”), a
limited liability partnership.[1]
Villaje was the initial owner and developer of the Villaje Del Rio project.

In
July 2002, Villaje signed a written contract with Rio Architects for
architectural services. The contract required Rio Architects to prepare design
phase documents as well as construction phase documents consisting of drawings
and specifications setting forth in detail the requirements for the
construction of the project. The contract also required Rio Architects to
coordinate the work of structural, mechanical, electrical, and civil engineers;
the surveyor; and the landscape architect. Under the contract, Rio Architects
was to be paid 5.25% of the project’s construction costs for its architectural
services.

To
fund the project, Villaje applied for a loan for nearly $27 million from
Berkshire Mortgage Finance, Limited Partnership (ADeutsche
Bank@). The loan was
to be insured by HUD, which required review of the architectural plans to make
sure they complied with HUD guidelines. During its initial review, HUD
determined the architectural plans failed to comply with its guidelines. The
architectural plans were revised and eventually passed review by Deutsche Bank.
Thereafter, the loan was approved for closing. The loan closed on February 13,
2003, and Rio Architects was paid $881,958.00 for its architectural services. 

Villaje
hired a general contractor, Andres Holding Corporation, to oversee construction
of the project. Andres began construction using the architectural plans created
by Rio Architects. In June 2004, a dispute arose between Andres and Villaje
over design changes, change orders, and the cost of those change orders. As a
result, Deutsche Bank, HUD, Geis, and Andres met to discuss the plans, and they
came up with more than one hundred mechanical, structural, and architectural
changes to the plans developed by Rio Architects at a cost of over $500,000.00.
Ultimately, Villaje fired Andres and construction came to a halt. 

In
December 2004, Deutsche Bank declared Villaje’s loan in default, because, among
other things, construction was not completed by the target completion date of
December 13, 2004, and construction had ceased for more than twenty days.
Deutsche Bank later accelerated the note on the loan and ultimately assigned it
to HUD. HUD then sold the note to Colina. When Colina acted to enforce its
rights under the note, Villaje filed a voluntary petition for bankruptcy. In
the bankruptcy proceeding, the bankruptcy trustee auctioned off various Villaje
assets. Colina, now a
creditor, made a $100,000.00 “credit bid” for Villaje’s claims against Geis and
Rio Architects “not sounding in tort.”
The bankruptcy court signed an order approving Colina’s credit bid. 

2. Claims
Filed Against Geis d/b/a Rio Architects

On
May 25, 2007, Colina filed the underlying suit against Geis d/b/a Rio
Architects. Colina’s petition alleged it was pursuing claims against Geis d/b/a
Rio Architects, which it had acquired by credit bid in the bankruptcy
proceeding. Colina alleged two alternative causes of action. First, Colina
alleged the contract between Rio Architects was fraudulent and unlawful based
on Rio Architects=s
failure to register with the Texas Board of Architectural Examiners and its
failure to employ or associate with a licensed architect when the plans,
designs, and specifications for the Villaje Del Rio project were drafted. Based on the allegedly fraudulent
and unlawful actions taken by Rio Architects, Colina sought rescission of the
contract and the return of the $881,958.00 architectural fee that Villaje had
paid to Rio Architects. Alternatively, Colina alleged Rio Architects breached
its contract with Villaje by supplying plans, drawings, and specifications that
did not comply with all applicable local and HUD requirements and did not
comply with architectural standards. Under its breach of contract theory,
Colina sought damages caused by Rio Architects, “including but not limited to
the architectural fees of $881,958.00, and other economic and actual damages.” 

In
February 2009, the case was tried to the court. The witnesses testifying at
trial included Colina’s corporate representative, David Adelman, and Geis.
Colina’s expert witness, Jack McGinty, also testified. After hearing all of the
evidence, the trial judge made a preliminary ruling in favor of Colina and
requested briefing on damages and other issues prior to rendering final
judgment.

Two
days after the trial ended, but before the final judgment was signed, Geis
filed a motion for leave to amend his pleadings to include the affirmative
defense of limitations. Colina filed objections to the motion for leave,
arguing it would be prejudiced by the requested trial amendment. A hearing was
held on Geis’s motion for leave to amend his pleadings and the motion was
denied. 

On
May 11, 2009, the trial court signed a final judgment, answering all questions
of law and fact in favor of Colina. The final judgment authorized Colina to
recover actual damages from Geis in the amount of $881,958.00. Findings of fact
and conclusions of law were filed, indicating Colina prevailed on both its unlawful
contract and breach of contract theories of recovery. 

After
the final judgment was signed, but before the trial court=s plenary power expired,
Geis filed a motion to vacate the judgment, asserting Colina lacked standing
because the evidence failed to show Colina actually acquired Villaje’s claims
against Geis and Rio Architects by completing the credit bid in the bankruptcy
court. A hearing was held on the motion to vacate the judgment and the motion
was denied. This appeal followed.

On
appeal, Geis argues that Colina was precluded from recovering on either its
unlawful contract claim or its breach of contract claim, and that the evidence
was legally and factually insufficient to support the damage award.
Additionally, Geis argues that the trial court should have granted his motion
for leave to file a trial amendment adding the affirmative defense of
limitations. Finally, Geis asks us to dismiss this cause because Colina lacked
standing to sue. 

In Pari Delicto Defense

The
defense of in pari delicto requires Texas Courts, as a general rule, to decline
to enforce illegal contracts when the contracting parties are equally
blameworthy. In his first issue, Geis raised the defense of in pari delicto to
Colina’s unlawful contract theory of recovery. In his second issue, Geis raised
defenses other than in pari delicto to Colina’s breach of contract theory of
recovery.[2]
Based on this briefing, we considered Geis’s in pari delicto defense as
involving only the unlawful contract theory of recovery. At oral argument, Geis
appeared to agree with this 


interpretation of his arguments and briefing.[3]
As a result, our initial opinion did not address Geis’s first issue, which
raised the in pari delicto defense to the unlawful contract theory. Instead, we
only addressed Geis’s second issue, which raised defenses other than in pari
delicto to the breach of contract theory. And, because of the way Geis briefed
and argued the case, we did not address the in pari delicto defense as to the
breach of contract theory. Upon overruling Geis’s second issue, we
upheld the judgment based on the breach of contract theory alone. See Tex. R. App. P. 47.1 (requiring
opinions to be as brief as practicable but to address every issue raised and
necessary to final disposition of the appeal).

In
his post-opinion motions, however, Geis asserts that our initial opinion could
be construed as holding that the in pari delicto defense does not apply to
breach of contract claims. Geis further asserts our initial opinion should have
addressed the in pari delicto defense as to both the unlawful contract and the
breach of contract theories. In the interest of justice, and to avoid any
confusion regarding whether the in pari delicto defense applies to breach of
contract claims, we will address Geis’s first issue.

“The
equitable defense of in pari delicto, which literally means, ‘in equal
fault,’ is rooted in the common-law notion that a plaintiff’s recovery may be
barred by his own wrongful conduct.” Pinter v. Dahl, 486 U.S. 622, 632
(1988). Application of the in pari delicto defense, however, is not limited to
a claim for equitable rescission. See Villanueva v. Gonzalez, 123 S.W.3d
461, 467 (Tex. App.—San Antonio 2003, no pet.) (upholding summary judgment on
breach of contract claims when parties were in pari delicto and claims were
based upon the same unenforceable agreement). As a general rule, Texas courts
will neither aid in the enforcement of an illegal executory contract, nor
relieve from an illegal contract, a party who has executed it. Herrmann v.
Lindsey, 136 S.W.3d 286, 290 (Tex. App.—San Antonio 2004, no pet.).
Instead, Texas courts leave the parties to such executed, unlawful contracts in
the position in which they, by their voluntary acts, have placed themselves. Id.
at 291. 

There
are exceptions to the general rule that Texas courts leave parties to an
illegal contract where they find them.
As the Texas Supreme Court has observed, 

The general rule
that denies relief to a party to an illegal contract is expressed in the maxim,
In pari delicto potior est conditio defendantis. The rule is adopted,
not for the benefit of either party and not to punish either of them, but for
the benefit of the public. In many cases relief is granted to the party who is
not in pari delicto. It has been said that even where the parties are in pari
delicto relief will sometimes be granted if public policy demands it. There is
often involved, in reaching a decision as to granting or withholding relief,
the question whether the policy against assisting a wrongdoer outweighs the
policy against permitting unjust enrichment of one party at the expense of the
other. The solution of the question depends upon the peculiar facts and the
equities of the case, and the answer usually given is that which it is thought
will better serve public policy. 

 

Lewis v.
Davis, 199 S.W.2d 146, 151 (Tex. 1947) (citations omitted). Thus, the Texas
Supreme Court has articulated two exceptions to the rule that courts will not
aid parties to an illegal contract. See id.; see also Orthodontic
Ctrs. of Texas, Inc. v. Wetzel, No. 09-50769, 2011 WL 365287, at *2 (5th
Cir. Feb. 7, 2011) (analyzing Texas substantive law). First, a party to an
illegal contract may recover when it is not in pari delicto. Lewis, 199
S.W.2d at 151. Texas courts have held that parties are not in pari delicto when
one party had access to facts indicating that the contract was illegal but the
party enforcing the contract did not. Graham v. Dean, 188 S.W.2d 372,
373 (Tex. 1945); Villanueva, 123 S.W.3d at 467. Additionally, Texas
courts have held that parties are not in pari delicto when a contract violates
a statute that applies to only one of the contracting parties. Am. Nat’l
Ins. Co. v. Tabor, 230 S.W. 397, 399 (1921); New Boston Gen. Hosp., Inc.
v. Tex. Workforce Comm’n, 47 S.W.3d 34, 41 (Tex. App.—Texarkana 2001, no
pet.) (op. on rehearing); Oakes v. Guar. Ins. Co., 573 S.W.2d 899, 902
(Tex. Civ. App.—Eastland 1978, writ ref’d n.r.e.). Second, a party to an
illegal contract may recover even when it is in pari delicto, when public
policy interests weigh in favor of allowing the claim to proceed. Lewis,
199 S.W.2d at 151. 

Here,
Geis asserts that Villaje was in pari delicto because he was the only person
authorized to act on behalf of Villaje, and his knowledge of the facts
indicating that the contract was illegal had to be “imputed equally to both Rio
Architects and Villaje Del Rio.” For the following reasons, we reject this
assertion.

The
trial court found that Villaje did not have knowledge that Rio Architects was
violating the statutes and regulations governing the practice of architecture.
These findings, which are not specifically challenged on appeal, are supported
by the record. The record shows Geis disavowed knowledge of many of the facts involving
the illegal performance of the contract at trial. Geis testified that he lacked
knowledge of the acts, omissions, and work performed by Rio Architects’
employees at critical stages in the transaction. In particular, Geis testified
he lacked knowledge of the acts and omissions of Robert Dafler, a design
architect who was briefly employed by Rio Architects and who was found to have
violated Texas Board of Architectural Examiners regulations with respect to
this project. Specifically, Dafler was found to have unlawfully allowed use of
his architect seal to approve plans over which he exercised no supervision or
control. 

Additionally,
Geis advances no particular legal theory to explain why any knowledge he
possessed must necessarily be imputed to Villaje. Geis simply asserts his
knowledge must be imputed by virtue of the fact that he was the only person
authorized to act on behalf of Villaje. However, even though Villaje was formed
by Geis and he served as one of its partners, Villaje was a separate legal
entity. Texas law provides that partnerships are legally distinct from
individual partners. Kao Holdings, L.P. v. Young, 261 S.W.3d 60, 63 n.9
(Tex. 2008). The same is true of a member or manager of a limited liability
company and the company itself. Sanchez v. Mulvaney, 274 S.W.3d 708, 712
(Tex. App.—San Antonio 2008, no pet.). 

The
record does not conclusively establish that both parties to this contract had
access to the facts indicating the performance of the contract was illegal. The
parties therefore were not in pari delicto.

The
parties were not in pari delicto for another reason. As expressed by statute,
Texas public policy requires the use of licensed architects. At the time the
parties signed the contract in this case, Texas law provided,

In order to
safeguard life, health, and property, and the public welfare, and in order to
protect the public against the irresponsible practice of the profession of
architecture by properly defining and regulating the practice of architecture,
no person shall practice architecture, as herein defined, within this State,
after the effective date of this Act, unless he or she be a registered
architect, as provided by this Act.

 

Act of May 26,
1989, 71st Leg., R.S., ch. 858, § 1, 1989 Tex. Gen. Laws 3836, repealed by Act
of May 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 5020
(repeal effective June 1, 2003) (current version at Tex. Occ. Code Ann. §§ 1051.701, 1051.0015 (West Supp. 

2010)).[4] This statute
was clearly directed at providers of architectural services, rather than
consumers of architectural services. 

Here,
Rio Architects was found to have violated administrative regulations governing
the practice of architecture. See, e.g., 22 Tex. Admin. Code §§ 1.101; 1.103,
1.104; 1.121-.124 (Architect’s Seal, Compliance and Enforcement). Like the
aforementioned statute, these regulations were directed at providers of
architectural services such as Rio Architects, not at consumers, such as
Villaje. In light of theses statutes and regulations, Villaje was certainly
less culpable than Rio Architects. See Tabor, 230 S.W. at 400 (holding
an unlawful contract between insurer and insured was enforceable when the
statute violated was intended to penalize insurers who violated the law); New
Boston Gen. Hosp., 47 S.W.3d at 40-41 (holding employee was not in pari
delicto with employer when the statute violated did not apply to employee); Oakes,
573 S.W.2d at 902 (holding contracting parties were not in pari delicto when
the statute imposed an obligation on only the party who acted without a
license). 

But
even if we were to assume that the parties in this case were in pari delicto, the
public policy interests here weigh in favor of allowing recovery. When parties
are in pari delicto, relief will be granted if public policy demands it. Lewis,
199 S.W.2d at 151; Wetzel, 2011 WL 365287, at *4 (citing Wright v.
Wight & Wight, 229 S.W. 881, 882 (Tex. Civ. App.—El Paso 1921, no writ)).
In such cases, courts do not consider the guilt of the respective parties, but
rather look to the higher right of the public. Wetzel, 2011 WL 365287,
at *4; Wight, 229 S.W at 882. In these instances, relief is granted to
discourage similar transactions by others. Wetzel, 2011 WL 365287, at
*4; Wight, 229 S.W at 882.

Here,
even if Villaje had imputed knowledge of facts making the performance of the
contract illegal, public policy considerations weigh in favor of allowing
recovery. The evidence showed that the defects in the architectural plans were
particularly egregious in this case. The plans developed by Rio Architects
omitted fire suppression systems, fire sprinklers, and emergency exits;
required bridges and balconies to encroach property lines; included parking
garage ramps that exceeded the permissible slope allowable by the Americans
with Disabilities Act; had multi-floor residential buildings with elevators
that did not go to the ground level; called for incomplete and deficient
structural bracing in the parking garage; included a faulty roof system that
would be susceptible to water penetration; and had a deficient air conditioning
and insulation system. Allowing recovery here advances the public interest by promoting
compliance with architectural statutes and regulations, and by discouraging
similar illegal transactions in the future. 

As
the Texas Supreme Court recognized in Lewis, the in pari delicto defense
depends on “the peculiar facts and the equities of the case.” Under the
admittedly peculiar facts and equities of this case, Colina’s recovery was not
barred by the defense of in pari delicto. We, therefore, overrule Geis’s first
issue.

Remaining Defenses to Breach of Contract

 

In
his second issue, Geis argues Colina could not recover for breach of contract
because Villaje accepted the benefits of the contract even after it learned
about deficiencies in the architectural plans that constituted a breach of
contract. Geis also argues Colina could not recover for breach of contract
because Villaje waived its right to sue for breach of contract by failing to
sue when it became aware of the deficiencies in the plans.

Geis
relies on two cases in this section of his brief. First, Geis cites Guerrero
v. Hagco Bldg. Sys., Inc., for the proposition that, in order to
recover, a plaintiff in a rescission suit must return or offer to return any
consideration which he has received under the contract. 733 S.W.2d 635, 637
(Tex. App.—San Antonio 1987, no writ). In Hagco, we held that the jury
was entitled to find from the evidence that the plaintiffs failed to relinquish
possession of real property because of evidence showing their continued use of
the property and, therefore, we affirmed the trial court’s judgment denying the
remedy of equitable rescission. Id. at 638. Geis’s reliance on Hagco in
this section of his brief is misplaced. Hagco stands for the proposition
that retention of benefits bars an equitable recovery for rescission of a
contract, not that it bars a legal recovery for breach of contract. See
Tiger Truck, LLC v. Bruce’s Pulp & Paper, LLC, 282 S.W.3d 176, 183
(Tex. App.CBeaumont
2009, no pet.) (recognizing Hagco, which involved a suit for equitable
rescission, was inapplicable to a suit for breach of contract). We, therefore,
conclude Villaje’s failure to return any benefits it received under the
contract does not preclude Colina’s recovery for breach of contract.

Second,
Geis cites In the Interest of C.T., for the proposition that Colina
could not recover for breach of contract because Villaje waived this right. 749
S.W.2d 214, 215 (Tex. App.—San Antonio 1988, no writ). Geis argues “[t]he fact
that Villaje Del Rio did not sue Geis d/b/a Rio Architects when it sued Andres
and Deutsche Bank for their role in bringing construction to a halt
demonstrates an intentional and voluntary relinquishment of a known right.”
Geis further argues all of his affirmative defenses, which included waiver,
ratification, estoppel, laches, and release, “revolve around the fact that
Villaje Del Rio waived its ability to recover damages, if any, against Geis by
failing to act after the period that it knew or should have known about the
complaints Colina has raised with the plans.” Although In the Interest of
C.T. is a case involving waiver, it concerns the validity of a written
relinquishment of parental rights; it does not address the issue urged by Geis
that the failure to sue one party when one sues other parties amounts to a
voluntary relinquishment of a known right. See 749 S.W.2d at 215-16.
Thus, In the Interest of C.T. is distinguishable from the case before
us.

Waiver
is “an intentional relinquishment of a known right or intentional conduct
inconsistent with claiming that right.” Jernigan v. Langley, 111 S.W.3d
153, 156 (Tex. 2003); Enterprise-Laredo Assocs. v. Hachar’s, Inc., 839
S.W.2d 822, 835 (Tex. App.CSan
Antonio 1992), writ denied per curiam, 843 S.W.2d 476 (Tex.
1992). Because waiver is an affirmative defense, its elements must be proven by
the party who pleads it. See Tex.
R. Civ. P. 94. The elements of waiver are (1) an existing right,
benefit, or advantage; (2) knowledge of its existence; and (3) an actual intent
to relinquish the right, or intentional conduct inconsistent with the right. Ulico
Cas. Co. v. Allied Pilots Ass’n, 262 S.W.3d 773, 778 (Tex. 2008).
Ordinarily, the existence of waiver is a question of fact. Langley, 111
S.W.3d at 156; Hachar’s, 839 S.W.2d at 835. In determining if waiver has
in fact occurred, courts examine the acts, words, or conduct of a party to
determine if it “unequivocally manifested” an intention to no longer assert the
right in question. Hachar’s, 839 S.W.2d at 835; see also Langley,
111 S.W.3d at 156 (“Waiver is largely a matter of intent, and for implied
waiver to be found through a party’s actions, intent must be clearly
demonstrated by the surrounding facts and circumstances.”).

Here,
Geis had the burden to prove waiver at trial. The trial court found against
Geis on all of his affirmative defenses, including waiver. On appeal, Geis
argues that Colina was precluded from recovering under breach of contract
because Villaje failed to file suit against him when it sued the general
contractor and the lender. In support of this argument, Geis contends the
evidence at trial showed that the general contractor, Andres, had raised many
of the same complaints that Colina raised in its suit, and that while
construction was still under way, Villaje attempted to work with Andres to
address these concerns. See Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241-42 (Tex. 2001) (noting party attacking legal sufficiency of an adverse
finding on an issue on which it had the burden of proof must show, as a matter
of law, all vital facts in support of the issue; and party attacking factual
sufficiency of an adverse finding on an issue on which it had the burden of
proof must show the finding is against the great weight and preponderance of
the evidence). 

Nevertheless,
Geis only argues that Villaje waived its breach of contract claim because it
failed to sue him when it became aware of deficiencies in the architectural
plans. Geis, however, does not direct us to any place in the record showing
words, conduct, or actions on the part of Villaje that unequivocally manifest
its intent to refrain from asserting its right to sue for breach of the
architectural contract. We, therefore, conclude Geis has failed to demonstrate
on appeal that the evidence establishes as a matter of law all facts vital in
support of waiver, or that the trial court’s adverse finding on waiver is
against the great weight and preponderance of the evidence. We overrule Geis’s
second issue.

Damages

In
his third issue, Geis argues the evidence is legally and factually insufficient
to support the damages awarded. Here, Geis argues (1) the trial court should
have reduced the damage award by $847,475.00; (2) the expert witness’s opinion
testimony does not support the damage award; and (3) this court should order a
remittitur of the damage award.

The
universal rule for measuring damages for the breach of contract is just
compensation for the loss or damage actually sustained. Phillips v. Phillips,
820 S.W.2d 785, 788 (Tex. 1991) (quoting Stewart v. Basey, 245 S.W.2d
484, 486 (Tex. 1952)). Breach of contract damages are generally designed to
protect three interests: a restitution interest, a reliance interest, and an
expectation interest. O’Farrill Avila v. Gonzalez, 974 S.W.2d 237, 247
(Tex. App.CSan Antonio
1998, pet. denied). The purpose of reliance damages is to restore the status
quo at the time before the contract was made. Hart v. Moore, 952 S.W.2d.
90, 97 (Tex. App.CAmarillo
1997, pet. denied). On the other hand, the purpose of expectancy damages is to
restore the non-breaching party to the same economic position that it would
have been in had the contract not been breached. Qaddura v. Indo-European
Foods, Inc., 141 S.W.3d 882, 888-89 (Tex. App.CDallas 2004, pet denied).

Reliance
damages are similar to out-of-pocket damages. Hart, 952 S.W.2d at 97.
Out-of-pocket damages measure the difference between the value the buyer has
paid and the value of what he has received. Arthur Andersen & Co. v.
Perry Equip. Corp., 945 S.W.2d 812, 817 (Tex. 1997); Brown Found. Repair
& Consulting, Inc. v. Henderson, 719 S.W.2d 229, 231 (Tex. App.CDallas 1986, no writ) (“Damages
may be established by proving the amount paid for repairs and the entire lack
of value thereof.”).
Expectancy damages are similar to benefit-of-the-bargain damages. See Qaddura, 141 S.W.3d at
888-89. Benefit-of-the-bargain damages measure the difference between the value
as represented and the value received. Perry, 945 S.W.2d at 817. 

As
a threshold matter, we note Geis tailors his argument and analysis in this
section of his brief to benefit-of-the-bargain damages—the amount necessary to
put Villaje in as good a position as if the contract had been performed. But
the record shows the measure of damages awarded by the trial court was
out-of-pocket damagesCthe
difference between the value Villaje paid and the value of what it received. 

In
a legal sufficiency review, we consider the evidence in the light most
favorable to the finding, crediting favorable evidence if a reasonable
factfinder could and disregarding contrary evidence unless a reasonable
factfinder could not. City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). If there is more than a scintilla of evidence to support the trial
court’s finding, then the legal sufficiency challenge should be overruled. Formosa
Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d
41, 48 (Tex.1998). In a factual sufficiency review, we consider all the
evidence supporting and contradicting the finding. Plas-Tex, Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We set aside the trial
court’s finding only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986). 

At
trial, Geis testified he used most of the architectural fee received from
Villaje to buy two letters of credit on behalf of Villaje that were required by
the lender, Deutsche Bank. Later, when questioned by Colina’s lawyer, Geis testified
that according to his recollection the letters of credit were owned by him
personally, not by Villaje. Geis further testified that he had signed a
certification stating that no portion of the architect’s fee had been or would
be returned in any form, either directly or indirectly, to Villaje. Based on
this equivocal evidence, Geis argues the trial court should have reduced the
total damage award by $847,475.00, the amount he spent to purchase the letters
of credit for Villaje. 

Geis
essentially argues the trial court erred by failing to grant him an offset.
However, the right of offset is an affirmative defense. Brown v. Am.
Transfer & Storage Co., 601 S.W.2d 931, 936 (Tex. 1980). The party
asserting offset has the burden of pleading this affirmative defense and
proving the facts necessary to support it. Id. Here, Geis faults the
trial court for failing to allow him an offset; however, the record shows Geis
never requested an offset in his pleadings. Because this offset was not
requested in Geis’s pleadings, this complaint is not preserved for appellate
review. See Zuniga v. Velasquez, 274 S.W.3d 770, 774 (Tex. App.CSan Antonio 2008, no pet.)
(noting the affirmative defense of offset must be pled or it is waived); Dal-Chrome
Co. v. Brenntag Southwest, Inc., 183 S.W.3d 133, 144-45 (Tex. App.CDallas 2006, no pet.)
(holding appellate complaint about offset of damages was waived when it was not
presented to the trial court).

Next,
Geis argues the evidence in support of the damage award lacks the required reasonable
basis and evidentiary support to be affirmed by this court. In asserting the
evidence is legally and factually insufficient to support the damage award,
Geis urges us to disregard the expert opinion testimony of McGinty, Colina’s
expert, as conclusory, complaining McGinty failed to describe how he reached
his opinion or estimate the cost of correcting the deficiencies. With respect
to the value of the plans provided by Rio Architects, McGinty offered the
following testimony:

It’s my opinion
that they probably have a negative value, and that’s because I think it’s going
to cost more in architectural fees to correct the mistakes and restore the
damage and get the project completed than that amount of $881,000. And that
opinion is based on my experience of what it costs to do this kind of work in
scope and nature.  

 

Our review of the record
shows McGinty expressly testified his opinions were based upon a personal
inspection of the project; a review of the drawings, plans, and specifications
for the project; a review of other documents and depositions; a review of
relevant laws, codes, and regulations; and a review of architectural treatises.
Thus, the record shows McGinty’s testimony was not conclusory. See State
Farm Lloyds v. Hamilton, 265 S.W.3d 725, 733 (Tex. App.—Dallas 2008, pet.
dism’d) (holding expert’s opinion testimony was not conclusory when it was
based on specific facts and analysis); Gonzalez v. Salinas, No.
04-06-00266-CV, 2007 WL 2042758, at *3 (Tex. App.CSan
Antonio 2007, no pet.) (holding expert’s opinion was not conclusory when it was
based on his education and experience, his inspection of the home, his
evaluation of the foundation design, and his evaluation and testing of the
soil). In addition, because McGinty testified the architectural plans provided
by Rio Architects were worthless, he was not required to estimate the cost of
correcting the deficiencies. 

In his testimony, McGinty
provided additional reasoning to support his opinion. McGinty testified that a
practicing architect would not be able to take the plans provided by Rio
Architects, clean them up, make revisions, stamp them, sign them, date them,
and use them because there were “serious design deficiencies that have to be
addressed” and “they’re not easy questions.” According to McGinty, these design
deficiencies required (1) creating expensive mechanical air-conditioning
systems due to exposed ducts in the ceiling space because the structure was too
low; (2) modifying ramps because the slope of the ramps exceeded the allowable
slopes under the law; (3) devising a prefabricated, weatherproof wall to be
inserted behind a concrete wall; (4) designing a completely new roof system,
possibly pitched; and (5) developing sun controls and awning shelters on
windows facing the south and west in order to make the air conditioning
function. In summarizing his opinion, McGinty stated, “There’s a host of
problems that are going to have to be addressed. The answers are not apparent
without a great deal of work.” Considering the evidence in the light most
favorable to the judgment, we conclude there was more than a scintilla of
evidence to support the trial court’s finding that Rio Architects’ plans and
drawings “had a negative value” and “were worthless.” We hold the evidence is
legally sufficient to support the damage award.

As to the factual sufficiency
of the evidence to support the damage award, Geis maintains there were many
conflicts between the testimony of McGinty and Adelman, Colina’s corporate
representative. Geis argues the factfinder should have inferred that the
architectural plans and services had some value based on Adelman’s testimony.
Adelman testified that the framing of the structure was about ninety-five
percent complete when Colina first acquired an interest in Villaje. Adelman
further testified the new owner had hired engineers and an architect to
redesign the project and had made the decision to keep the foundation, the
framing, and the shell of the buildings in place. Additionally, Adelman stated
the new owner decided to make some aesthetic changes to enhance the
marketability of the project. Adelman’s testimony, however, did not speak
directly to the value of architectural plans and services provided by Rio
Architects. And, while a factfinder might have inferred from Adelman’s
testimony that the partially-constructed project had some value, we conclude
the factfinder was not required to do so. Furthermore, McGinty testified
directly about the value of the plans provided by Rio Architects, and gave the
opinion that the plans provided by Rio Architects had a “negative value”
because “it’s going to cost more in architectural fees to correct the mistakes
and restore the damage and get the project completed than that amount of
$881,000.00.” Considering all of the evidence in a neutral light, we conclude
the trial court’s damage award was not so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. We hold the evidence is
factually sufficient to support the trial court’s damage award. 

Additionally, Geis requests a
suggestion of remittitur from this court. See Tex. R. App. P. 46.3. An appellate court may order a
remittitur of damages only if the evidence is factually insufficient to support
the amount awarded, or if the amount is against the great weight and
preponderance of the evidence. Pope v. Moore, 711 S.W.2d 622, 624 (Tex.
1986). Because we hold the evidence is factually sufficient to support the
damage award, we deny Geis’s request for a suggestion of remittitur. We
overrule Geis’s third issue.

Motion for Leave to File Trial Amendment

In
his fourth issue, Geis argues the trial court abused its discretion in denying
his motion for leave to amend his pleadings to include the affirmative defense
of limitations. Two days after the trial ended, Geis filed a motion stating,
“[d]uring the trial, evidence was introduced by both sides, without objection,
clearly indicating that this lawsuit is barred by the four-year statute of
limitations set forth in Section 16.004 of the Texas Civil Practice & Remedies
Code.” Colina filed a written response opposing the motion for leave, arguing
that the trial amendment was prejudicial on its face. 

Generally,
a trial court has no discretion to refuse a trial amendment unless (1) the
opposing party presents evidence of surprise or prejudice; or (2) the proposed
amendment asserts a new cause of action or defense, and thus is prejudicial on
its face, and the opposing party objects to it. Chapin & Chapin, Inc. v.
Tex. Sand & Gravel Co., Inc., 844 S.W.2d 664, 665 (Tex. 1992); Stephenson
v. LeBoeuf, 16 S.W.3d 829, 839 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied); Tex. R.
Civ. P. 63, 66. A trial amendment is mandatory if it is merely
procedural in nature, such as when conforming the pleadings to evidence
presented at trial. Chapin, 844 S.W.2d at 665; Stephenson, 16
S.W.3d at 839. Conversely, an amendment is not mandatory if it is substantive,
that is, if it changes the nature of the trial. Chapin, 844 S.W.2d at
665; Stephenson, 16 S.W.3d at 839. If the trial amendment is not
mandatory, the decision to allow or deny the amendment is within the sound
discretion of the trial court. State Bar of Tex. v. Kilpatrick, 874
S.W.2d 656, 658 (Tex.1994); Stephenson, 16 S.W.3d at 839. 

Geis
argues his trial amendment was mandatory because it was intended to conform the
pleadings to the evidence presented at trial. A party’s unpleaded issue may be
deemed tried by consent when evidence on the issue is developed under
circumstances indicating that the parties understood that the issue was in the
case, and the other party fails to make an appropriate complaint.
Continental Homes of Texas, L.P. v. City of San Antonio, 275 S.W.3d
9, 16 (Tex. App.—San Antonio 2008, pet. denied); Johnson v. Oliver, 250
S.W.3d 182, 186 (Tex. App.—Dallas 2008, no pet.). To determine whether an issue
was tried by consent, the reviewing court must examine the record for evidence
of trial of the issue, not just for admission of evidence on the issue. Continental
Homes, 275 S.W.3d at 16; Johnson, 250 S.W.3d at 186. Issues are not
“tried” merely by receipt of evidence on the issue. Continental Homes,
275 S.W.3d at 16.

Here,
Geis maintains the parties tried the issue of limitations by consent because
the trial record shows the architectural contract was entered into on July 26,
2002, and was fully performed by February 13, 2003, when Rio Architects
delivered the architectural plans and specifications under the contract. In
support of this argument, Geis directs our attention to the architectural
contract, closing documents, and loan settlement documents, which were admitted
into evidence at trial. Nevertheless, the record shows these documents were
admitted for other purposes, not for the purpose of trying the defense of
limitations by consent. After reviewing the record, we conclude the parties
were not under the impression that limitations was an issue in the case, and
did not in fact try the issue of limitations by consent. 

But
even if we assume that the defense of limitations was actually tried by consent,
the trial court could have properly concluded the proposed trial amendment was
prejudicial on its face. A trial court has the discretion to refuse a trial
amendment when the amendment asserts a new cause of action or defense, and
therefore, is prejudicial on its face, and the opposing party objects to the
amendment. Missouri Pacific R. Co. v. Buenrostro, 853 S.W.2d 66, 70-71
(Tex. App.—San Antonio 1993, writ denied) (citing Greenhalgh v. Service
Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990)). And, when it appears
that the new matter was known to the party seeking to file the amendment, or by
reasonable diligence it could have been known by the party, the request should
be denied. Id. 

Geis
relies on a Texas Supreme Court case, Vermillion v. Haynes, to support
his argument. 215 S.W.2d 605, 609 (Tex. 1948). In Haynes, the supreme
court held that the trial court erred in striking the appellant’s request for a
trial amendment to include a limitations defense. In finding an abuse of
discretion, the supreme court emphasized that the respondents’ objections to
the trial amendment in no way suggested that they were surprised or unprepared
to meet the issues raised by the trial amendment. Id. 

The
case before us is distinguishable from Haynes. Here, unlike the party
objecting in Haynes, Colina explained in its written objection how the
requested trial amendment would cause it surprise and prejudice. Moreover,
based on the arguments presented in the objection, the trial court could have
concluded that the addition of a limitations defense would reshape the nature
of this case in a fundamental way. If Geis had asserted a limitations defense
during the discovery period, Colina could have pleaded an exception to suspend
or toll the statute of limitations such as fraudulent concealment, equitable
tolling, or the discovery rule, and it could have conducted appropriate
discovery. But because Geis waited to raise the defense of limitations until
after trial, Colina was prevented from conducting relevant discovery and developing
an appropriate response to a limitations defense. Thus, the trial court could
have reasonably concluded that a trial amendment adding the defense of
limitations at this late stage in the litigation would have been prejudicial to
Colina. Additionally, the trial court could have reasonably concluded that Geis
in the exercise of due diligence should have anticipated and pleaded the
affirmative defense of limitations.

We
hold the trial court acted within its discretion in denying Geis’s motion for
leave to file a trial amendment. See Blue Star Operating Co. v. Tetra
Technologies, Inc., 119 S.W.3d 916, 920-21 (Tex. App.—Dallas 2003, pet.
denied) (holding the trial court acted within its discretion in refusing
post-verdict request for a trial amendment that was prejudicial on its face); Buenrostro,
853 S.W.2d at 70-71 (holding the trial court did not abuse its discretion in
denying a request for a trial amendment injecting a new defense that would have
prejudiced the plaintiff). We overrule Geis’s fourth issue.

Standing

In
his fifth issue, Geis argues this court should dismiss this cause for want of
jurisdiction because Colina failed to prove its standing. Standing focuses on
whether a party has a sufficient relationship with the lawsuit so as to have a
justiciable interest in the outcome. Austin Nursing Center, Inc. v. Lovato,
171 S.W.3d 845, 848 (Tex. 2005). In other words, standing focuses on who may
bring a cause of action. M.D. Anderson Cancer Ctr. v. Novak, 52 S.W.3d
704, 708 (Tex. 2001). Without standing, a court lacks subject matter
jurisdiction to hear the case. Lovato, 171 S.W.3d at 849. The absence of
standing may be raised by a plea to the jurisdiction, as well as by other
procedural vehicles. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554
(Tex. 2000). Because standing is a component of subject matter jurisdiction, it
cannot be waived and can even be raised for the first time on appeal. City
of Laredo v. R. Vela Exxon, Inc., 966 S.W.2d 673, 679 (Tex. App.—San
Antonio 1998, pet. denied). When reviewing the standing of a party for the
first time on appeal, we construe the petition in favor of the party, and if
necessary, review the entire record to determine if any evidence supports
standing. Id. 

To
recover on an assigned cause of action, the party claiming the assigned right
must prove not only that a cause of action existed that was capable of
assignment, but also that the cause was in fact assigned to the party seeking
recovery. Ceramic Tile Int’l, Inc. v. Balusek, 137 S.W.3d 722, 724 (Tex.
App.—San Antonio 2004, no pet.) (holding that when assignee did not offer into
evidence the document showing the claims were assigned to him, assignee failed
to establish his right to recover). Relying on Balusek, Geis argues that
even though the trial evidence shows the bankruptcy court accepted Colina’s
credit bid of $100,000.00 to purchase Villaje’s non-tort claims against Geis
and Rio Architects, the trial evidence fails to show that Colina actually
completed the transaction and purchased Villaje’s non-tort claims against Geis
and Rio Architects. Geis argues the bankruptcy order is no evidence that Colina
actually completed the transaction and acquired Villaje’s non-tort claims
against him. Geis further argues Colina presented no additional evidence that
it actually closed on and paid for its claims. As a result, Geis contends the
record shows Colina had no standing to bring the underlying suit.

In
Balusek, we reversed a judgment in favor of an assignee when the record
showed the assignment was not admitted into evidence at trial. 137 S.W.3d at
725. We held that because the assignment was not admitted into evidence, the
assignee did not meet his burden of showing a cause of action existed that was
capable of assignment and that the cause of action was in fact assigned to him.
Id. Here, unlike the situation in Balusek, the bankruptcy order
authorizing the sale of Villaje’s non-tort claims was admitted into evidence.
This order provides, in pertinent part, 

The credit bid
of Colina in the amount of $100,000.00 is the highest and best offer for the
purchase of the Debtor’s interest in all claims against George Geis, George
Geis d/b/a Rio City, Villaje Management LLC, Goldbrick, Inc.; Rio Architects
and Geis Construction not sounding in tort, save and except for claims arising
under Chapter 5 of Title 11, United States Code (Asset 6), and the sale of such
claims to Colina is hereby APPROVED.

 

The
bankruptcy order does not require any further action to consummate the sale of
these claims to Colina. In addition, the bankruptcy order expressly provides
that it “will be effective upon entry.” In addition, the testimony of Adelman
and Geis indicates Colina actually acquired the non-tort claims of Villaje and
had standing to bring these claims. In his testimony, Adelman expressly stated
that the underlying lawsuit was filed after Colina purchased Villaje’s non-tort
claims against Geis and Rio Architects. Adelman’s testimony on this issue is
undisputed. 

In
addition, on cross-examination, Geis testified as follows:

Counsel:        Now, you understand that the claims being asserted by
Colina here is for an asset that they purchased from the bankruptcy estate of Villaje;
right?

 

Geis:              I understand they
purchased a claim at the auction.

 

Counsel:        They purchased several
claims at the auction; right?

 

Geis:              I thought you were
asking about this particular claim.

 

Counsel:        Yes, sir, this
particular one.

 

Geis:              Yes.

....

Counsel:        And how much did
Colina pay or bid to acquire the claims that it                             purchased?

 

Geis:              I don’t remember. I only remember this claim that
you’re asking me about. I don’t remember the other claims.

 

Counsel:        Well, Colina [c]redit bid $100,000 to have the right to
stand in Villaje’s shoes and assert the non-tort claims against Rio Architects;
right?

 

Geis:              Right.

 

We
conclude the bankruptcy order, Adelman’s testimony, and Geis’s testimony are
some evidence that Colina in fact purchased and acquired Villaje’s non-tort
claims against Geis and Rio Architects. We, therefore, hold the evidence
presented in this case shows Colina had standing to bring these claims. We
overrule Geis’s fifth issue.

Conclusion

The
trial court’s judgment is affirmed.

Karen Angelini, Justice

 

 

 

 

 

 

 

 

 









[1]
The partnership consisted of a corporate general partner, Villaje Del Rio
Management Company, LLC and a limited partner, Geis.  Geis was also the sole
member and manager of Villaje Del Rio Management Company, LLC.





[2]
In his opening brief, Geis summarized his first two issues as follows:

 

Colina cannot
recover on its unlawful contract theory because it has no greater claim than
Villaje Del Rio would have had. If Villaje Del Rio’s contract with Geis d/b/a
Rio Architects was unlawful, then Villaje Del Rio could not recover on it, and
Colina (standing in Villaje Del Rio’s shoes) likewise [cannot] recover. In
Texas, unlawful contracts are unenforceable. There is a presumption that the
parties to unlawful contracts are in pari delicto—equally culpable
because they are equally aware of the illegality of the transaction. The trial
court found that the parties were not in pari delicto because Geis d/b/a
Rio Architects had superior knowledge to Villaje Del Rio. But it is nonsensical
to argue that Geis d/b/a Rio Architects somehow concealed knowledge about this
transaction from Geis as sole owner and partner of Villaje Del Rio. Geis d/b/a
Rio Architects and Villaje Del Rio were in pari delicto, so this Court
should leave the parties exactly as it found them.

 

Likewise, Colina
cannot recover on its breach of contract claim because Villaje Del Rio accepted
the benefits of the contract even after it learned of what Colina now complains
were deficiencies in the plans. Furthermore, Villaje Del Rio has already
received the benefit of the $881,958 architect’s fee it sought to recover in
this lawsuit. Waiver, estoppel, laches, release, and ratification therefore
prevent Colina from recovering on its breach of contract claim.

 





[3]
At oral argument, the following exchange took place:

 

Justice
Angelini:              And the in pari delicto idea only applies to the first
argument, not the second? Is that correct?

 

Geis’s Counsel:               That
is correct, Your Honor.

 

Justice
Angelini:              They [Colina] could only recover for breach of contract,
except for the other arguments you presented?

 

Geis’s
Counsel:               Yes, Your Honor.





[4]
The law further provided,

 

No
person, firm, partnership, corporation or any other group or combination of
persons shall use or attempt to use such prescribed seal, or any similar seal,
or replica thereof unless the use is by and through an architect duly
registered under the provisions of this Act. No architect duly registered under
this Act shall authorize or permit the use of his seal by any unregistered
person, firm, corporation, partnership or any other group or combination of
persons without his personal supervision, and a violation hereof shall be
grounds for cancellation of the registration certificate of any such offending
architect.

 

Act of May 19, 1973, 63rd Leg., R.S., ch. 361, § 7, 1973
Tex. Gen. Laws 804, repealed by Act of May 22, 2001, 77th Leg., R.S.,
ch. 1421, § 13, 2001 Tex. Gen. Laws 5020 (repeal effective June 1, 2003)
(current version at Tex. Occ. Code Ann. §
1051.701 (West Supp. 2010)).